UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA


DAVID J. WIDI,                              :
                                            :
            Petitioner,                     :
                                            :
      v.                                    :        CIVIL NO. 3:CV-15-1325
                                            :
WARDEN C. MAIORANA,                         :        (Judge Kosik)
                                            :              efendants
            Respondent.                     :


## MEMORANDUM

     Presently before the court is a petition for writ of habeas corpus pursuant to 28

U.S.C. § 2241 filed by David J. Widi ("Widi" or "Petitioner").  At the time the petition

was filed, Widi was an inmate confined at the United States Penitentiary at Canaan,

Pennsylvania.  In the petition, Widi alleges that his due process rights were violated

during a disciplinary hearing held at FCI-Otisville, New York, Petitioner's former

place of confinement, on November 21, 2012.  The DHO found Petitioner guilty of the

prohibited act of Fighting with Another Person, a Code 201 violation, and he lost 27

days of good conduct time.  (Doc. 14-2, Resp. Ex. 1, Attach. D at 17.)  The matter is

ripe for consideration and, for the reasons that follow, the petition will be denied.

## I.   Factual Background

     Incident Report #2358001 was issued to Petitioner on October 1, 2012 by a

Special Investigative Supervisor charging him with Fighting with Another Person

and Destroying Government Property, violations of Codes 201 and 208.  (Doc. 14, Ex. 1, FiggsGanter Dec.; Attach. C, Incident Report at 1.)  The incident was described by reporting officer W. McBride as follows:

> On October 1, 2012, at 8:00 a.m., I reviewed video surveillance of the Law Library for October 1, 2012, between 7:30 a.m. and 7:45 a.m., for a possible altercation and destruction of government property.  The video surveillance revealed the following: At 7:34 a.m. inmate Charles McIntosh, register number 08770-089, and inmate David Widi, register number 05168-036, were in the Law Library of Education having a verbal confrontation.  The verbal confrontation became a physical altercation with both inmates pushing each other.  During the physical altercation inmate McIntosh raised his cane in an attempt to strike inmate Widi.  Both inmates had the cane in their hands, swung the cane striking the typewriter, destroying the typewriter by making it so it cannot be used.  The value to replace the style typewriter being used is $509.95.

(Doc. 14-2, Incident Report at ¶ 11.)

The report was delivered at 7:20 p.m. on the same date by Lieutenant B. Henwood.  (Id. ¶ 14.)  Henwood informed Petitioner of his right to remain silent throughout his disciplinary proceedings, but did tell Petitioner that any silence could be used to draw an adverse inference against him.  Petitioner was further informed that his silence alone would not be used to support a finding of fact that he had committed a prohibited offense.  (Id. ¶ 23.)  During Henwood's investigation of the incident, Petitioner, displaying a fair attitude, stated "I have nothing to say.  That's not accurate; obviously you see something happened there, it shows on the tape.  I just went to sit down at the typewriter, first come first serve.  I didn't do anything to start this."  (Id. ¶ 24.)

2

On October 4, 2012, Petitioner appeared before the Unit Discipline Committee ("UDC") and said that "[t]he report is somewhat true." (Id. ¶ 17.)  The UDC referred the matter to the DHO for final disposition. (Id. ¶ 18.)   On the same date, Petitioner signed an acknowledgment that he received an Inmate Rights at Discipline Hearing Form. (Doc. 14-2 at 7.)  He received this form from R. Dimmie, and it advised him of the following rights: (1) to have a written copy of the charges at least 24 hours prior to appearing before the DHO; (2) to have a staff representative; (3) to call witnesses and present documentary evidence; (4) to present a statement or to remain silent (noting that silence may be used to draw an adverse inference); (5) to be present throughout the discipline hearing except during a period of deliberation or when institutional safety would be jeopardized; (6) to be advised of the DHO's decision, facts supporting that decision, except where institutional safety would be jeopardized, and the DHO's disposition in writing; and (7) to appeal the DHO decision through the Administrative Remedy Procedure.  (Id.)

On October 4, 2012, Petitioner also received a Notice of Discipline Hearing before the DHO form.  (Doc. 14-2 at 8.)  He received this from Dimmie at 10:21 a.m. that morning.  Petitioner signed the form and indicated that he did not wish to have a staff representative, but did wish to have Ms. Santiago as a witness.  (Id.)

The hearing started on October 30, 2012, but was suspended to allow the DHO to review the surveillance video footage. The hearing resumed on November 21, 2012.

(Doc. 14-2 at 15.)   Because Petitioner again waived staff representation, none was appointed.  (Id., II.)  The DHO also noted that Petitioner admitted the charges, and summarized his statement in the report as follows:

> I was sitting in front of the typewriter and he [McIntosh] unplugged it. He told me stuff was in memory.  I would have moved but that wasn't good enough.  He got in my face and I put my hands out to create a little distance between us.  He left, came back and got in my face again so I put my hands out.  He came at me with the cane and I had no where to go. The DHO asked if you [Petitioner] tried to flee and you [Petitioner] replied, there was nowhere to go.

(Id. at III(B).)  Although Ms. Santiago was requested as a witness, the DHO did not allow this witness because her "testimony was not needed as she provided a memorandum stating McIntosh told her Widi broke the typewriter.  Whether he was 'set up' or not isn't relevant to whether any of these acts were committed."  (Id. at III(C)(3).)

The DHO considered the Incident Report and the Investigation.  In addition, the following documentary evidence was also considered: the October 1, 2012 Memorandums submitted by Mr. Allen, the VT Instructor and Ms. Santiago, the Education Technician.  (Id. at III(D).)  The DHO determined that Petitioner committed the prohibited act of fighting, but expunged the charge of destroying government property.  (Id. at IV, V.)  Specifically, the following information was relied on by the DHO in finding that Petitioner engaged in fighting.  First, the DHO relied on the incident report written by Mr. McBride, the SIS Technician, who stated that the

surveillance video showed Petitioner and McIntosh pushed against each other and struggling, holding McIntosh's cane which struck the typewriter.  (Id. at V.)  It was also noted by the DHO that Allen's memorandum stated that he heard Petitioner and McIntosh arguing over the typewriter.  Allen also noticed that the lights were out in the typing room, and found both Petitioner and McIntosh to be out of breath when Allen entered through the law library.  (Id.)  Petitioner's statements were also considered by the DHO, but the DHO noted that his review of the video clearly showed that Petitioner and McIntosh were bumping into each other and pushing each other back and forth.  (Id.)  It was also noted by the DHO that Petitioner directed the cane to the typewriter, and that Petitioner acknowledged the DHO's characterization of the incident.  Based on the forgoing, the DHO wrote the following:

> A fight is described as a hostile, verbal or physical altercation between two or more persons.  Based on the incident report, supporting documentation and your eventual admission, the DHO finds you have committed Prohibited Act 201 - Fighting with Another Person.

(Id.)  As a sanction, Petitioner received 60 days of disciplinary segregation, the disallowance of 27 days of good conduct time and a loss of commissary privileges for 3 months.  (Id. at VI.)

The report was delivered to Petitioner on March 4, 2013.  (Id. at IV.) Respondent states that delivery of the report was delayed because Petitioner was in transit.  (Doc. 14 at 7; Ex. 1, FiggsGanter Decl., see also Attach. D to DHO Report.) When the DHO learned that Petitioner had not received the report, he arranged for

5

Petitioner to get a copy and for the Regional Director to also get a copy so he could review Petitioner's appeal.

The instant federal petition was filed on July 6, 2015, along with a supporting memorandum and a declaration.  (Docs. 1-3.)  Petitioner claims that: (1) there was false/insufficient evidence; (2) he was denied a staff representative; (3) he was denied the ability to call witnesses; (4) he was not provided with the written findings of the DHO; and (5) his competency/responsibility issues were not addressed.[1]

## II.   Discussion

The BOP disciplinary process is fully set forth in the Code of Federal Regulations, Title 28, Sections 541 through 541.8.  These regulations dictate the manner in which disciplinary action may be taken should a prisoner violate institutional rules.  The first step requires filing an incident report and conducting an investigation.  Staff are required to conduct the investigation promptly absent intervening circumstances beyond the control of the investigator.  See 28 C.F.R. § 541.5.  Following the investigation, the matter is then referred to the UDC for a hearing pursuant to 28 C.F.R. § 541.7.  If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions.  If the alleged violation is serious and

---

[1] Although there is an exhaustion requirement, see Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000) and Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996), Respondent does not argue that Petitioner failed to exhaust his administrative remedies. The exhaustion process is set forth in 28 C.F.R. § 542.10 et seq.

warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest or high category offenses, the UDC refers the matter to a DHO for a hearing. Id. Based upon the seriousness of the charges against Petitioner, the instant matter was referred for a disciplinary hearing.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974.) Greatest category offenses carry a possible sanction of loss of good conduct time credits. When a prison disciplinary hearing may result in the loss of good conduct time credits, due process requires that the prisoner receive (1) written notice of the claimed violation at least twenty-four (24) hours in advance of the hearing, (2) an opportunity to call witnesses and present documentary evidence in his or her defense when doing so would not be unduly hazardous to institutional safety or correctional goals, and (3) a written statement by the fact finder as to evidence relied on and reasons for the disciplinary action. See Wolff v. McDonnell, 418 U.S. 539, 564-66 (1974). The DHO's decision is required to be supported by some evidence in the record. See Superintendent v. Hill, 472 U.S. 445, 454 (1985); see also Young v. Kann, 926 F.2d 1396, 1402-03 (3d Cir. 1991)(applying Hill standard to federal prisoner due process challenges to prison disciplinary proceedings). The determination of whether the standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of

witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." <u>Hill</u>, 472 U.S. at 455-56. Under <u>Hill</u>, judicial review of a prison disciplinary decision is limited to ensuring that the prisoner was afforded certain procedures, the action against him was not arbitrary, and that the ultimate decision has some evidentiary support. <u>Id.</u> at 457; <u>see also</u> 28 C.F.R. § 541.8(f) (requiring that the DHO's decision be "based upon at least some facts and, if there is conflicting evidence, on the greater weight of the evidence."). Moreover, "[t]he sufficiency standard is met where a DHO supports a finding of culpability solely by reference to an incident report compiled by a corrections officer." <u>Moles v. Holt</u>, 221 F. App'x 92, 94 (3d Cir. 2007)(citations omitted).

The procedural requirements of <u>Wolff</u> and <u>Hill</u> have been met in the instant case. <u>Wolff</u> first requires that an inmate receive advanced written notice of the violations at least 24 hours before the DHO hearing occurs. In this case, Petitioner received a copy of the Incident Report the same day as the incident occurred, October 1, 2012. The UDC hearing was held on October 4, 2012, and the matter was thereafter referred to the DHO. The DHO hearing initially began on October 30, 2012, but was suspended until November 21, 2012, to allow the DHO to review the surveillance video. Petitioner does not dispute that he received notice of the hearing on October 1, 2012, the date of the incident, when the report was delivered to him by B. Henwood.

This is documented in the record.  (Doc. 14-2 at 5, ¶ 14.)  The record also establishes that Petitioner waived his right to a staff representative at the DHO hearing, only requested that Ms. Santiago be a witness, and did not present any documentary evidence at the hearing.  (Id. at 15, ¶¶ II(A), III(C) and (D).)[2] Although Petitioner claims that he wanted the assistance of Frank Abbamonte as his staff representative and voiced this request at the UDC hearing, Petitioner signed the Notice of Discipline Hearing Before the DHO form, indicating that he did not wish to have a staff representative.  (Doc. 14-2 at 8.)  Although he did indicate on this form that he did wish to present a witness, Ms. Santiago, the witness was found by the DHO to be unnecessary because Santiago provided a memorandum stating that inmate McIntosh told her that Petitioner broke the typewriter. (Doc. 14-2 at 16, C(3); Doc. 14-2 at 14, Santiago Memo.)  While Petitioner may have still wanted Ms. Santiago to testify, this was not a criminal prosecution, but rather a disciplinary proceeding.  As such, Petitioner was not entitled to the same rights he would be in a criminal trial.  See Wolff, 418 U.S. at 564-571; Morrissey v. Brewer, 408 U.S. 471, 488 (1972).  He does not dispute that he did not list anyone else as a witness. To the extent he believes the investigating officer was required by Wolff to gather witnesses for him, he is

---

[2]  While Petitioner contends that he was "coerced" into signing this form, he offers no evidence in support thereof, and there is no record of this issue being brought up at the disciplinary hearing.  Moreover, the form clearly reveals that he was able to list a witness, even though said witness did not testify.

mistaken.  Moreover, the DHO provided on the DHO Report that he did not call the one and only witness listed by Petitioner, because she was unnecessary in that she had provided a memorandum with her testimony.  (Id. Doc. 14-2 at 14, Santiago Memo; Doc. 14-2 at 16, III(C)(3).)  Although Petitioner stated on the form requesting Santiago, that she would say inmate McIntosh set him up, any such statement was not given by Santiago in her written memo, and in any event is irrelevant to whether Petitioner engaged in the charged conduct of Fighting.

Further, while Petitioner complained that the DHO did not review his competency report, and therefore he was denied due process because documentary evidence was not considered, there is absolutely no evidence in the record that any such report was ever provided by Petitioner to the DHO or listed by Petitioner on the DHO form as documentary evidence he wished to be considered.  In fact, the DHO report reveals that the only documentary evidence considered by the DHO was the Incident Report and Investigation, the Memorandum submitted by Ms. Santiago and the Memorandum submitted by Mr. Allen.  (Doc. 14-2 at 16. III(D).)  Petitioner fails to offer one shred of evidence that he ever submitted the competency report to the DHO.  Further, it is questionable whether the competency report would have assisted Petitioner in any event in that it was drafted several years prior to the incident at issue in this case and was in regards to his competency to stand trial.  Further, Petitioner presents no evidence that he argued to the DHO that he was, in fact, incompetent.

10

In accordance with the Wolff requirements, Petitioner was also given the opportunity to make a statement at the hearing, and did so, which was noted in the DHO report.  To the extent Petitioner disputes what was reported, he simply presents no evidence in support of his position.  To submit a self-serving declaration will not defeat Petitioner's signature on the DHO form indicating that he did not want a staff representative, had one witness, and had no documentary evidence to present.  In addition, Petitioner makes no claim that the DHO was not impartial.

Petitioner mostly takes issue with the fact that he did not receive the DHO report in a timely manner.  According to the Wolff due process requirements, the prisoner is entitled to a written statement by the fact finder, as to the evidence relied on and the reasons for the disciplinary action.  Wolff, 418 U.S. 563.  Under the regulations, this ordinarily is to occur within ten (10) days of the DHO's decision.  See 28 C.F.R. § 541.8(h).  The report was issued by the DHO on January 11, 2013.  (Doc. 14-2 at 18.)  The report also indicated that it was not delivered to Petitioner until March 4, 2013. (Id.)  In support of this delivery date, Respondent submits the Memorandum of Jeffrey Gluc, Mohawk Case Manager at FCI Ray Brook, New York, stating that he had received a message from the DHO on March 4, 2013 indicating that Petitioner never received a copy of the DHO report because he was in transit with respect to his transfer to Ray Brook.  (Id. at 19.)  The DHO informed Gluc that he had just learned that day that Petitioner had not received the written decision with respect

to his disciplinary proceedings.  As such, Gluc issued a copy of the decision to

Petitioner that same day so he could continue with the appellate process.  In addition,

Respondent also attaches a copy of the correspondence from DHO Banks to Gluc

dated March 4, 2013, stating that he had just discovered that Petitioner had not

received the report and copying the Northeast Regional Officer so they would know

that Petitioner never received the written DHO report/findings.  (Id. at 20.)  Most

important is the fact that despite any late receipt by Petitioner of the report, he was not

prejudiced in any way, and has presented no evidence that he was.  He received a

merits review on his claims at each level of appeal.  Despite Petitioner's contention to

the contrary, he presents no evidence that he suffered any prejudice due to when he

received the report, and does not deny that he was able to exhaust his administrative

remedies.  The record supports that he was able to do so.  (Doc. 14-2, Ex. 1, ¶ 4.)  The

fact that he was not ultimately successful in his appeals does not support a finding that

Petitioner's due process rights were violated by the DHO.

Finally, Petitioner claims that there was false/insufficient evidence to support

the DHO's findings.[3]  This argument is without merit.  The reporting staff member and

the DHO both viewed the surveillance video and found Petitioner and inmate

---

[3] In his petition and supporting memorandum, Petitioner does question both the
sufficiency and the truthfulness of the evidence relied on by the DHO.  In his
traverse, Petitioner appears to abandon the sufficiency argument and focus only on
the allege "false" evidence in the report.

McIntosh pushing each other.  Petitioner admits that he was struggling with McIntosh, and that both he and McIntosh had the cane in their hands. (Doc. 3, Ex. C-1.)  In the declaration submitted by Petitioner in support of his petition, he admits that he put his hands up to McIntosh and also admits grabbing the cane from him.  (Doc. 3, Widi Dec.)  In the determination set forth by the DHO, he explains the reasons for the sanctions imposed and the evidence relied on.  The reporting officer derives no known benefit by providing false information with respect to the video surveillance reviewed and has a legal obligation to present accurate and factual information.  The DHO also reviewed the video.  As supported by the record, the DHO's decision meets or exceeds the "some evidence" standard in finding Petitioner guilty of Fighting.  As such, Petitioner's disciplinary hearing complied with all the Wolff procedural due process requirements.  For these reasons, the instant petition for writ of habeas corpus lacks merit and will be denied.  An appropriate order follows.